IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JOHN J. KACZMAREK, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 3:24-cv-615 |
| | : |
| EQUIFAX INFORMATION SERVICES, LLC, | : |
| EXPERIAN INFORMATION, SOLUTIONS, INC. | : |
| TRANS UNION, LLC and TRUIST BANK, N.A., | : |
| | : |
| Defendants. | : |
| | : |

## COMPLAINT

Plaintiff John J. Kaczmarek files this Complaint against Defendants Equifax Information Services, LLC; Experian Information Solutions, Inc.; Trans Union, LLC; and Truist Bank, N.A. (collectively, "Defendants"). In support, Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1. Congress enacted the Fair Credit Reporting Act ("FCRA") to protect consumers from the devastating impacts of inaccurate credit reporting. S. Rep. No. 91-517, at 1 (1969) (explaining that the FCRA was intended to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report"); *see also Guimond v. Trans Union Credit Info.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (explaining that the FCRA was enacted "to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner" (citations omitted)).

2. The statute's express purpose is for "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel,

insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. 1681(b).

3.  Even so, inaccurate credit reporting is still a pervasive, long-standing issue for consumers. For example, in 2012, the FTC published a report finding that twenty percent of consumers who participated in its study had at least one error on their credit report.[1] Almost ten years later, the situation was even worse: a 2021 study found that more than 34 percent of surveyed consumers identified at least one error on their credit reports.[2]

4.  Here, Truist reported that Plaintiff owed more than $10,000 on a Truist credit card stemming from hotel charges in Africa that Plaintiff did not incur. Equifax, Experian, and Trans Union reported the same on Plaintiff's credit reports.

5.  When Plaintiff disputed the reporting of that account with Equifax, Experian, and Trans Union, the credit reporting agencies each failed to adequately investigate his disputes or remove the inaccurate information from his credit report.  Worse, each time he disputed the reporting, Defendants updated the account to report it as more and more delinquent, causing further harm to his credit.

6.  As a result, Plaintiff alleges claims against Equifax, Experian, and Trans Union for: (1) violating the FCRA, §1681e(b), by failing to reasonably ensure the maximum possible

---

[1] *See* Fed. Trade Comm'n, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003*, at 64 (Dec. 2012), https://www.ftc.gov/sites/default/files/documents/reports/section-319-fair-and-accuratecredit-transactions-act-2003-fifth-interim-federal-trade-commission/130211factareport.pdf.

[2] *See* Syed Ejaz, Consumer Reports, *A Broken System: How the Credit Reporting System Fails Consumers and What to Do About It* (June 10, 2021), https://advocacy.consumerreports.org/wp-content/uploads/2021/06/A-Broken-System-How-the-Credit-Reporting-System-Fails-Consumers-and-What-to-Do-About-It.pdf.

accuracy of his credit reports; and (2) violating the FCRA, §1681i, by failing to fully investigate his disputes.

7. In addition, Plaintiff alleges claims against Truist for failing to properly investigate his disputes and to review all relevant information provided to it by Equifax, Experian, and Trans Union, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District and Division, and most of the events giving rise to Plaintiff's claims occurred here.

## PARTIES

10. Plaintiff John J. Kaczmarek is a natural person residing in this District and Division.

11. Defendant Equifax is a foreign limited liability company with a principal place of business in Atlanta, Georgia. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

12. Defendant Experian is a foreign corporation with a principal place of business in Orange, California. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

13. Defendant Trans Union is a foreign limited liability company with a principal place of business in Chicago, Illinois. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

14. Defendant Truist is a national association with a principal place of business in Charlotte, North Carolina. It is a "furnisher" as governed by the FCRA.

## FACTS

15. At the start of August 2023, Plaintiff's Truist credit card had a $0 balance.

16. Plaintiff maintained that credit card account—which had a credit limit of $15,000—in the event he needed to use it for small daily purchases.

17. The credit card account, therefore, typically had a balance of less than $1,000.

18. In early August or before, an unknown fraudster obtained access to Plaintiff's credit card number or data without Plaintiff's knowledge or permission.

19. On or about August 8, using Plaintiff's credit card number or data, the fraudster performed three transactions at a merchant identified on Plaintiff's account statement as "ADJ-AVEDENHOTELS."

20. The three transactions were made in the following amounts: $2,701.00; $6,132.00; and $5,037.00.

21. Plaintiff did not authorize those transactions, and Plaintiff gave no other person or entity permission to use his credit card or his credit card number. Plaintiff also did not benefit from those transactions in any way.

22. Upon information and belief, "AVEDENHOTELS" operates as a travel booking entity in and around Nairobi, Kenya.[3]

23. Plaintiff has never visited Africa—in August 2023 or otherwise.

24. Plaintiff also has never transacted business with "AVEDENHOTELS."

25. After Plaintiff noticed the unauthorized transactions on his Truist credit card account statements, he disputed the transactions to Truist directly.

26. After purporting to undertake an investigation, Truist advised Plaintiff that it was not "able to determine that the transaction(s) were fraudulent."

---

[3] Aveden, https://www.avedenbooking.com (last visited July 10, 2024) (advertising "Hotel Rooms Instantly" at various locations throughout east Africa).

27. Truist provided Plaintiff with no other explanation for how it concluded that he was responsible for purported hotel charges that were incurred in east Africa.

28. Upon information and belief, Truist did not contest Plaintiff's dispute with the merchant because the merchant was in a foreign country.

29. Plaintiff contested Truist's errant conclusion multiple times in the months that followed.

30. Yet Truist maintained its decision even after Plaintiff advised it that he had involved the Henrico County Police Department and separately filed reports with federal law enforcement.

31. At first, Plaintiff made minimum payments on his credit card account to avoid an account delinquency that might lead to undesired consequences.

32. Plaintiff, however, ceased making payments after it became apparent that Truist would not stop its attempts to collect the fraudulently incurred balance.

33. Plaintiff eventually learned that, each month, Truist was reporting his account with a balance near the credit card's $15,000 limit.

34. That reporting was inaccurate because Plaintiff did not incur the charges reflected by the account balance.

35. The reporting should have been $0.

36. Plaintiff disputed that inaccurate reporting to Equifax, Experian, and Trans Union on or about April 26, 2024.

37. Plaintiff's dispute letters made clear that he did not owe any of the reported balance because he did not incur the charges reflected by the balance.

38. Plaintiff's dispute letters specifically mentioned that the merchant appeared to be a hotel based in Africa.

39. Upon information and belief, Equifax, Experian, and Trans Union forwarded notification of Plaintiff's disputes to Truist.

40. Despite Plaintiff's disputes and his explanation, Truist verified its reporting as accurate.

41. Equifax, Experian, and Trans Union, meanwhile, relied entirely on Truist's investigation results and neglected to conduct any other investigation into Plaintiff's disputes.

42. As a result, the inaccurate information about the Truist account remained on Plaintiff's Equifax, Experian, and Trans Union reports.

43. On or about June 3, 2024, Truist advised Plaintiff via letter that it had closed his credit card account because of "Delinquent Credit Obligations." That letter further communicated to Plaintiff that Truist had deemed his rewards points to be forfeited. Truist further instructed Plaintiff to pay the allegedly past due balance even though it knew that Plaintiff did not incur the balance claimed to be owed.

44. Because the inaccurate reporting remained on Plaintiff's Equifax, Experian, and Trans Union reports, Plaintiff disputed it with the credit reporting agencies again on or about June 18, 2024.

45. Plaintiff's second dispute letters again made clear that the credit card balance was not incurred by him, with his permission, or for his benefit.

46. Plaintiff's second dispute letters also: (i) enclosed the account statement showing the charges and the foreign merchant's name; and (ii) referenced the reports filed with Henrico County and the FBI.

47. Despite Plaintiff's disputes, Truist verified its reporting as accurate, and Equifax, Experian, and Trans Union again relied entirely on Truist's investigation results and neglected to

conduct any other investigation into Plaintiff's disputes. Making matters worse, in response to Plaintiff's disputes, Truist updated its reporting of Plaintiff's account as even more delinquent, which Equifax, Experian, and Trans Union reflected on Plaintiff's credit files.

48. As a result of Defendants' conduct, Plaintiff has suffered significant actual damages, including a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

### *Defendants' FCRA Violations Were Willful*

49. As a standard practice, Equifax, Experian, and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite several court decisions admonishing this practice. *See, e.g.*, *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

50. Upon information and belief and consistent with its standard policies and procedures, Equifax, Experian, and Trans Union automatically generated its "investigation" results once Truist verified the status of the account. Equifax, Experian, and Trans Union did not take any extra actions to verify the accuracy of the information that Truist provided them.

51. Instead, Equifax, Experian, and Trans Union blindly accepted Truist's version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

52. Equifax, Experian, and Trans Union continue the practice of parroting the furnisher's response despite several lawsuits alleging (and establishing) that they fail to conduct a reasonable investigation under the FCRA.

53. Equifax, Experian, and Trans Union do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

54. As a result, at all times relevant to this Complaint, Equifax's, Experian's, and Trans Union's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, their conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors before furnishing reports.

55. Truist's processing of consumer disputes was also willful and carried out in reckless disregard for consumers' rights under the FCRA. For example, Truist's conduct was willful because it was intentionally accomplished through intended procedures that prioritize efficiency over accuracy.

56. The willfulness of Truist's FCRA violations can be established by, for example:

   a. Congress enacted the FCRA in 1970, and Truist and its predecessor entities have had several years to become compliant;

   b. Truist is a company with access to legal advice through its own general counsel and outside litigation counsel. Yet there is not contemporaneous evidence that Truist determined that its conduct was lawful;

   c. Truist knew, or had reason to know, that its conduct contradicted the FCRA's plain language, regulatory guidance, and the relevant case law;

    d. Truist voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading of the statute that was merely careless;

    e. Truist's FCRA violations were repeated and systematic;

    f. Truist had substantial documentation available to it that apprised it of its duties under the FCRA but still chose not to comply with the statute; and

    g. Truist had notice of its defective dispute processing procedures through internal audits and litigation but chose not to meaningfully change its policies and procedures to comply with the FCRA.

## COUNT ONE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)
## (EQUIFAX, EXPERIAN, and TRANS UNION)

57. Plaintiff incorporates the preceding allegations.

58. Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files that they published and maintained.

59. Because of Equifax's, Experian's, and Trans Union's conduct, Plaintiff suffered actual damages, including, without limitation, a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

60. Equifax's, Experian's, and Trans Union's conduct in violating § 1681e(b) was willful, rendering it liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

61. In the alternative, Equifax, Experian, and Trans Union were negligent, entitling Plaintiff to a recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. § 1681i
## (EQUIFAX, EXPERIAN, and TRANS UNION)

62. Plaintiff incorporates the preceding allegations.

63. Equifax, Experian, and Trans Union violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide ACA with all the relevant information about Plaintiff's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); (4) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

64. Because of Equifax's, Experian's, and Trans Union's violations of §1681i, Plaintiff suffered actual damages, including, but not limited to, a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

65. Equifax's, Experian's, and Trans Union's violations of § 1681i were willful, rendering it liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

66. In the alternative, Equifax, Experian, and Trans Union were negligent, entitling Plaintiff to a recovery under 15 U.S.C. § 1681o.

### COUNT THREE:
### VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)
### (TRUIST)

67. Plaintiff incorporates the preceding allegations.

68. On one or more occasion within the past two years, Truist violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

69. When Plaintiff disputed the account with Equifax, Experian, and Trans Union, Truist used a dispute system named "e-Oscar," which is an automated system that the credit reporting agencies have developed to quickly transmit disputes to furnishers.

70. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

71. E-Oscar's dispute processing is systemic and uniform: when the credit reporting agencies receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

72. Upon information and belief, the ACDV form is way that Truist has elected to receive consumer disputes under 15 U.S.C. § 1681i(a).

73. Upon information and belief, Equifax, Experian, and Trans Union forwarded Plaintiff's disputes by ACDVs.

74. Truist understood the nature of Plaintiff's disputes when it received the ACDV forms.

75. Upon information and belief, when Truist received ACDV forms containing Plaintiff's disputes, it followed a standard and systematically unlawful process where it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to Equifax, Experian, and Trans Union.

76. Upon information and belief, when Truist receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether there is information already in its computer system that would demonstrate the disputed information is misleading or inaccurate.

77. Because of Truist's violation of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered actual damages, including a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

78. Truist's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rending it liable to Plaintiff for punitive damages under 15 U.S.C. § 1681n.

79. In the alternative, Truist was negligent, entitling Plaintiff to a recovery under 15 U.S.C. § 1681o.

**COUNT FOUR:
VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)
(TRUIST)**

80. Plaintiff incorporates the preceding allegations.

81. On one or more occasion within the past two years, Truist violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax, Experian, and Trans Union.

82. As Plaintiff detailed in the previous Count, Truist has elected to use the e-Oscar system for its FCRA disputes from the credit reporting agencies.

83. When it received the ACDV forms from Equifax, Experian, and Trans Union, Truist did not review any of the information that Plaintiff included in his disputes, which demonstrated that Truist's reporting of the account was inaccurate.

84. Truist also ignored the other information that the consumer-reporting agencies provided about Plaintiff's disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

85. Truist knew the meaning of the dispute codes used by the consumer-reporting agencies in e-Oscar.

86. Truist does not contend that the ACDV system is an inadequate means to receive FCRA disputes from the consumer-reporting agencies.

87. If Truist had reviewed this information, it would have known that its previous reporting was incorrect and needed to be updated.

12

88. Truist understood Plaintiff's disputes and that he was disputing the balance reporting because they were fraudulent charges incurred on a continent that the Plaintiff had never visited.

89. Despite this, Truist did not update its incorrect reporting regarding the account and continued to report the inaccurate information about Plaintiff.

90. Because of Truist's 15 U.S.C. § 1681s-2(b)(1)(B) violations, Plaintiff suffered actual damages, including a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

91. Truist's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for damages under 15 U.S.C. § 1681n.

92. In the alternative, Truist was negligent, entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

**COUNT FIVE:**
**VIOLATION OF FCRA, 15 U.S.C. §§ 1681s-2(b)(1)(C) and (D)**

93. Plaintiff incorporates the preceding allegations.

94. On one or more occasion within the past two years, Truist violated 15 U.S.C. §§ 1681s-2(b)(1)(C) and (D) by publishing its representations within Plaintiff's credit files without also including any notation at all that the account was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

95. For example, Truist failed to add the "XB" or "XC" code to the CCC (Compliance Condition Code) field of at least one of the ACDV dispute forms when it responded to the credit reporting agencies, which would have indicated that the account was disputed.

96. In addition, Truist failed to add any other notation that Plaintiff's account was disputed.

97. Furthermore, Truist knew that Plaintiff disputed the subject account through his direct and written disputes letters to the credit reporting agencies.

98. Plaintiff's disputes were bona fide as the account reported inaccurate derogatory information.

99. Because of Truist's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), Plaintiff suffered concrete and particularized harm, including but not limited to: a reduced credit score, reputational damage, embarrassment, humiliation, and other emotional distress.

100. Truist's violations were willful, rendering it liable for punitive damages under 15 U.S.C. § 1681n. In the alternative, Truist was negligent, entitling Plaintiff to recover against it under 15 U.S.C. § 1681o.

101. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Truist under 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants as pleaded above; his attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

Respectfully submitted,
**JOHN J. KACZMAREK**

*/s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB # 93738
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com

Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiff*