IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOHN J. KACZMAREK, )
)
        Plaintiff, )
)
v. ) Civil Action No. 3:24-cv-615-HEH
)
EQUIFAX INFORMATION SERVICES, )
LLC, *et al.* )
)
        Defendants. )

### MEMORANDUM OPINION
### (Granting Motion to Compel Arbitration and Staying Proceedings)

THIS MATTER is before the Court on Defendant Truist Bank's[1] ("Truist") Motion to Compel Arbitration and Stay (the "Motion to Compel," ECF No. 34) filed on March 6, 2025. Truist seeks to compel arbitration pursuant to its Credit Card Agreement, which mandates that Plaintiff John Kaczmarek ("Plaintiff") resolve his claims pursuant under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, ("FAA"). (Def.'s Mem. in Supp. at 2, ECF No. 35.)

The parties have filed memoranda supporting their respective positions, and Defendant's Motion is ripe for this Court's review. The Court will dispense with oral argument because the facts and legal contentions have been adequately presented to the Court, and oral argument would not aid in the decisional process. *See* E.D. Va. Loc. Civ.

---

[1] Truist Bank notes that in the Complaint, Truist Bank was mistakenly named Truist Bank, N.A.

R. 7(J). For the following reasons, the Court will grant Defendant's Motion to Compel Arbitration and stay the matter pending arbitration.

## I. BACKGROUND

On May 4, 2023, Plaintiff completed an application for a credit card with Truist, which resulted in Truist issuing Plaintiff a Visa credit card. (Def.'s Mem. in Supp. at 2.) After approving his application, Truist mailed Plaintiff the Visa credit card and a copy of the Credit Card Agreement containing the Mutual Arbitration Agreement. (*Id.* at 2–4.) In August 2023, Plaintiff noticed alleged fraudulent charges on his Truist card totaling approximately $15,000. (Pl.'s Mem. in Opp'n at 1, ECF. No. 36.) Plaintiff disputed the transactions to Truist directly; however, Truist advised Plaintiff it was unable to determine that the transaction(s) were fraudulent. (Am. Compl. ¶¶ 22–23, ECF No. 32.) Although Plaintiff twice disputed Truist's reporting that Plaintiff's account was near the credit card's $15,000 limit (*id.* ¶¶ 35, 41), Truist verified its reporting as accurate and closed Plaintiff's account (*id.* ¶¶ 39–40, 44). As a result, Plaintiff filed the original complaint on August 29, 2024. (ECF No. 1.) Truist requested an extension to respond to the Complaint (ECF No. 8) and filed an Answer to the Complaint on October 16, 2024 (ECF No. 15). Plaintiff settled his claims against the other three (3) defendants between October 24, 2024, and December 12, 2024. (ECF Nos. 16, 21, 22.)

In December 2024, Plaintiff sought to amend his Complaint. (ECF No. 23.) Truist consented to Plaintiff's request to amend. On January 7, 2025, before the Court

2

held its Initial Pre-Trial Conference,[2] the parties conducted a conference under Federal Rule of Civil Procedure 26(f) and agreed to serve initial discovery. (Ex. B at 2, ECF No. 36–2.) On February 7, 2025, both parties served initial disclosures (Ex. D at 2–3, ECF No. 36–4), and three (3) days later, Truist requested an extension to respond to Plaintiff's discovery requests (Ex. E at 2, ECF No. 36–5). Since the Court had not yet granted Plaintiff's motion for leave, Plaintiff renewed his request to file an Amended Complaint on February 11, 2025 (ECF No. 29), with Truist's continued consent (Ex. F at 3–4, ECF No. 36–6). The following day, the Court granted Plaintiff's motion. (ECF No. 31.) Plaintiff filed the Amended Complaint on February 15, 2025 (ECF No. 32). Truist responded to Plaintiff's discovery requests for the initial complaint nine (9) days later. On February 25, 2025, Truist sent an email to Plaintiff asking him to consent to arbitration. (Ex. H at 2, ECF No. 36–8.) Upon Plaintiff's rejection, Truist filed its Answer to the Amended Complaint (ECF No. 33) on March 3, 2025, and subsequently filed the Motion to Compel (ECF No. 34).

## II. LEGAL STANDARD

A party may compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, only if the party establishes:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

---

[2] The Initial Pre-Trial Conference scheduled for January 9, 2025, was postponed due to the closure of the courthouse.

3

*Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (citing *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002)). Any uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved "in favor of arbitration." *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see Adkins*, 303 F.3d at 500 ("Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation."). Whether a dispute is arbitrable is a question of contract interpretation, and courts must give effect to the parties' intentions as expressed in their agreement. *Wachovia Bank, Nat'l Ass'n v. Schmidt*, 445 F.3d 762, 767 (4th Cir. 2006). The scope of arbitrable issues is "to be decided by the court, not the arbitrator, '[u]nless the parties clearly and unmistakably provide otherwise.'" *Summer Rain v. Donning Co./Publ'rs, Inc.*, 964 F.2d 1455, 1459 (4th Cir. 1992) (quoting *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). Both the United States Supreme Court and the Fourth Circuit have construed language demonstrating the parties' intent "to arbitrate any dispute that '*ar[ose] out of or related to*'" a contract "to be broad arbitration clauses capable of an expansive reach." *Am. Recovery Corp. v. Comput. Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (alterations in original).

In deciding whether a dispute is arbitrable, "the court should apply 'ordinary state-law principles that govern the formation of contracts.'" *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 377 (4th Cir. 1998) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[G]enerally applicable [state] contract defenses, such as

4

fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see* Va. Code § 8.01-581.01 ("A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract.").

The party opposing arbitration bears the burden of proving that the claims are not appropriate for arbitration. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). In such an instance, the "court[] should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor . . . its enforceability . . . is in issue. Where a party contests either or both matters, 'the court' [not the arbitrator] must resolve the disagreement." *Bates v. Lundy Motors, LLC*, No. 3:16cv133-HEH, 2016 WL 6089827, at *4 (E.D. Va. Sept. 30, 2016), *adopted by Bates v. Lundy, LLC*, No. 3:16cv133-HEH, 2016 WL 6089727, at *1 (E.D. Va. Oct. 17, 2016) (quoting *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 299–300 (2010)).

### III. ANALYSIS

Plaintiff opposes arbitration for three (3) reasons. First, Plaintiff contends that Truist waived its right to compel arbitration because it knew of and acted inconsistently with its right to compel arbitration by actively participating in this litigation. (Pl.'s Mem. in Opp. at 4–5, ECF No. 36.) Specifically, Plaintiff highlights the fact that Truist

5

answered the original Complaint without asserting arbitration as an affirmative defense, participated in a Rule 26(f) conference, and answered discovery. (*Id.* at 7.) Plaintiff argues that the "totality of the circumstances" indicate that Truist acted inconsistently with its purported right to compel arbitration. (*Id.* at 6, 9 (quoting *Schwebke v. United Wholesale Mortg., LLC*, 96 F.4th 971, 976 (6th Cir. 2024)).)

Second, Plaintiff contends that Truist's right to arbitration does not arise from Plaintiff's new claims in the Amended Complaint. (*Id.* at 9.) Plaintiff argues that since he provided Truist with the proposed Amended Complaint when requesting Truist's consent, Truist could have advised Plaintiff's counsel that it did not believe that a new filing was appropriate because the new claims belonged in arbitration. (*Id.* at 9.) Plaintiff also claims that Truist is seeking arbitration on claims that existed in the first complaint, which he argues makes its request disingenuous. (*Id.*)

Finally, Plaintiff argues that even if Truist did not waive its right to compel arbitration, no agreement to arbitrate exists. (Pl.'s Mem. in Opp. at 10.) Primarily, Plaintiff contends that Truist offered no evidence that Plaintiff agreed to Truist's arbitration clause. (*Id.* at 11.) Plaintiff argues that since he never received, reviewed, or even saw the Credit Card Agreement, there was no mutual assent. (*Id.* at 13–14.) Moreover, Plaintiff contends that the declarant Truist offered as evidence of the agreement lacks personal knowledge and, therefore, Truist failed to produce the necessary evidence to prove Truist actually mailed the Credit Card Agreement to Plaintiff. (*Id.* at 14–15.)

6

In response to Plaintiff's denial of an agreement, Truist attached the signed copy of the relevant Credit Card Agreement stating that the applicant—Plaintiff—"agree[s] to be bound and comply with all of the terms and conditions of the Truist Consumer Credit Card Agreement. . . ." (Def.'s Reply at 2, ECF No. 37.) Additionally, Truist represents that it mailed Plaintiff a physical copy of the Credit Card Agreement along with his credit card (Def.'s Mem. in Supp. at 2), which specifically states: "[u]pon the demand of you or us, any Claim(s) will be resolved by individual . . . binding arbitration under the terms specified in this Mutual Arbitration Agreement." (Decl. ¶ 14, ECF No. 35–1.) Furthermore, Truist argues that Plaintiff impliedly accepted the terms and conditions of the Credit Card Agreement by requesting, receiving, and signing his credit card, as well as by charging purchases to the card, since these are considered methods of acceptance in the Credit Card Agreement. (*See* Decl. at 2, 6 ("The Agreement is effective upon the earlier of: (i) thirty (30) days after we open the Account and issue Card(s) to you or (ii) the first use of a Card or the Account by you or any Authorized User.").)

Next, Truist argues that Plaintiff's claims in the Amended Complaint are within the scope of the arbitration agreement. (Def.'s Mem. in Supp. at 9.) Truist contends that there is "significant relationship" between Plaintiff's claims and his Visa credit card account with Truist. (*Id.* at 10 (quoting *Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996)).) Truist asserts that since an agreement to arbitrate exists, and Plaintiff's claims arise out of or relate to Plaintiff's account with Truist, the Court should compel arbitration. (*Id.* at 10–11.)

Third, Truist contends that it did not waive its right to arbitrate since it did not act inconsistently with that right. (*Id.* at 11–12.) Truist argues that filing "minimal responsive pleadings" do not evidence its intent to waive its right to arbitration. (*Id.* at 12 (quoting *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 206 (4th Cir. 2004)).)

First, the Court finds that there is a mutual agreement between Plaintiff and Truist to arbitrate claims related to Plaintiff's Visa credit card. As Truist presented in its Reply, Plaintiff clearly signed the credit card application stipulating that he agrees to be bound and comply with all the terms and conditions of the Credit Card Agreement. (*See* Def.'s Reply at 2.) Next, the Court considers whether Truist's right to arbitrate arises from Plaintiff's new claims in the Amended Complaint and whether Truist waived its right to arbitrate.

An amended complaint supersedes the original complaint and "it renders the original complaint 'of no effect.'" *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) (quoting *Young v. City of Mt. Rainer*, 238 F.3d 567, 573 (4th Cir. 2001)). Because the Amended Complaint renders the previous Complaint "of no effect," the amendments entitled Truist to respond as it believed appropriate. *See id.* Here, Plaintiff amended his Complaint and added several additional substantive claims against Truist. Each of the new claims appear to fall under the scope of the Mutual Arbitration Agreement. (*See* Def.'s Mem. in Supp. at 2.) Therefore, Truist is entitled to compel arbitration so long as it had not acted inconsistently with its right to compel arbitration.

Even though Plaintiff identified instances where he argues Truist acted inconsistently with its purported right to compel arbitration, Plaintiff ignored the fact that Truist moved to compel arbitration only days after the filing of new claims against it. Plaintiff did not file his Amended Complaint until almost three (3) months after Truist consented to it, and Trust responded ten (10) days later by requesting, and subsequently moving for, arbitration. (*See* Ex. F at 3–4; Ex. H at 2.) Until Plaintiff filed his Amended Complaint, Truist was obligated to comply with all discovery deadlines under the original Complaint. Accordingly, the Court finds that Truist did not act inconsistently with its right to compel arbitration, and therefore Truist is entitled to compel arbitration.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Plaintiff is bound by the Credit Card Agreement and the Mutual Arbitration Agreement therein. Therefore, upon due consideration and finding it appropriate to do so, Truist's Motion to Compel (ECF No. 34) will be GRANTED and the Court will stay the matter pending those proceedings.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: June 16, 2025
Richmond, Virginia